

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FIVE

IN THE INTEREST OF: D.J.S.

)
)
)
)
)
)
)
)
)
)

No. ED110652

Appeal from the Circuit Court
of Audrain County

Honorable Michael S. Wright

FILED: June 20, 2023

### Introduction

D.J.S. appeals from the circuit court's judgment certifying him to be prosecuted as an adult. In his sole point on appeal, D.J.S. argues the circuit court abused its discretion because he could be properly treated in the juvenile justice system. Because the record supports the circuit court's determination that the juvenile system was not equipped to rehabilitate D.J.S. given the nature of the alleged offenses, we affirm the circuit court's judgment.

### Factual and Procedural History

The Juvenile Officer ("JO)" filed a petition against D.J.S. when he was fifteen years old alleging that he was delinquent for committing acts that would be, were he an adult, four counts of first-degree sodomy between January 1, 2018 and August 3, 2021. The petition alleged that D.J.S. committed multiple sexual offenses against the same individual beginning when D.J.S. was twelve years old and the individual was eight years old. The JO's investigation determined

that the allegations were serious, involved the use of violent force against a person, and were part of a pattern of conduct. The JO therefore moved to dismiss the juvenile cause of action and certify D.J.S. to be prosecuted as an adult under the general laws.

Reports showed multiple prior investigations into whether D.J.S. had been a neglected child. D.J.S.'s mother ("Mother") had a drug addiction, convictions for drug-related offenses, a conviction for endangering the welfare of a child, and a history of neglecting D.J.S. D.J.S. would stay with his aunt ("Aunt") for weeks or months at a time, and Aunt acted as his stand-in mom. There was conflicting testimony whether D.J.S. moved in permanently with Aunt in October of 2020 (from Aunt's hearing testimony) or 2021 (from Aunt's testimony in the JO's Social Summary), and the trial court found D.J.S. had been in Aunt's care since October 2020 until he was placed in the Juvenile Justice Center in August 2021. At the time D.J.S. moved in with Aunt, he was immature, often angry, and not accustomed to boundaries and rules. D.J.S.'s behavior improved under Aunt's supervision. The evaluating psychologist, Dr. Jason Lawrence ("Dr. Lawrence"), opined that D.J.S. would likely continue to improve in a structured environment with mental health treatment and that it was more likely that D.J.S. would be rehabilitated in the juvenile system than the adult prison system.

Based on a review of D.J.S.'s files, the JO observed that D.J.S. was "well developed and mature appearing" and "of average intelligence." D.J.S. was diagnosed with ADHD, adjustment disorder, mood disorder, and post-traumatic stress disorder ("PTSD"), and at school had an Individualized Education Program ("IEP"). Although D.J.S. had some school disciplinary issues, D.J.S. had no prior record of delinquent conduct in the juvenile system.

The JO maintained that the juvenile system did not have the capacity to supervise a child alleged to have committed forcible sodomy. A service coordinator supervisor of the Division of

2

Youth Services ("DYS") testified that each child's treatment plan is developed based on that child's needs and that the DYS offers no specific sex-offense treatment.

The circuit court subsequently dismissed the petition and ordered certification. D.J.S. now appeals.

## Point on Appeal

In his sole point on appeal, D.J.S. contends that the circuit court abused its discretion in certifying him to be prosecuted as an adult because D.J.S. could be rehabilitated in the juvenile system in that the evidence indicated D.J.S. was not sophisticated or mature and he had no repetitive pattern of offenses or history in the juvenile system to show he was incapable of rehabilitation in the juvenile system. Further, the evidence did not show the juvenile system was incapable of treating him.

## Standard of Review

We review the decision to certify a juvenile to the court of general jurisdiction by examining the totality of the circumstances to determine if the circuit court abused its discretion. Int. of T.D.S., 643 S.W.3d 510, 516 (Mo. App. E.D. 2021) (internal citation omitted). A circuit court abuses its discretion when its ruling "is so unreasonable and arbitrary that it shocks the sense of justice and is clearly against the logic of the surrounding circumstances." Id. (internal quotation omitted). In reviewing a circuit court's determination for an abuse of discretion, we will affirm the certification decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Int. of D.D.B., 660 S.W.3d 65, 74 (Mo. App. E.D. 2023) (internal citation omitted).

We give substantial deference to a circuit court's decision to admit evidence in a certification hearing. Int. of E.T.S., 663 S.W.3d 818, 823 (Mo. App. W.D. 2023) (quoting Int. of T.D.S., 643 S.W.3d at 516); see also A.R.K. v. Juv. Officer, 666 S.W.3d 233, 239 (Mo. App.

3

W.D. 2023) (internal quotation omitted) ("In assessing the criteria set forth in [S]ection 211.071.6,[1] 'the juvenile court is entitled to significant discretion in reaching its certification determination.'"). "[W]e will not reweigh the evidence or determine the reliability or credibility of the witnesses." Int. of D.D.B., 660 S.W.3d at 74 (internal citation omitted). However, statutory interpretation is a matter of law that we review de novo. Int. of J.T.J., 635 S.W.3d 566, 569 (Mo. banc 2021) (internal citation omitted).

## Discussion

The circuit court must consider specific statutory factors when considering juvenile certification. "The [ten] criteria listed in Section 211.071.6 are *non-exclusive* and our review is limited to a determination of whether, in the totality of the circumstances, [the] juvenile court abused its discretion in [its] certification order.'" State v. Thomas, 70 S.W.3d 496, 504 (Mo. App. E.D. 2002) (internal quotation omitted). The circuit court is "not required to give equal weight to each of the listed factors, nor [is] it required to make an express finding on each one." Id. (internal citation omitted). "Although required by [Section] 211.071 to consider the *nature* of the crimes charged in making a certification decision, the [circuit] court does not consider 'whether the juvenile did (or did not) commit them.'" Int. of E.T.S., 663 S.W.3d at 826 (quoting State v. Nathan, 404 S.W.3d 253, 261 (Mo. banc 2013)).

Here, the circuit court found that the allegations against D.J.S. were serious, the allegations involved force, and the alleged offenses were against a person. These uncontested findings supported certification under the first three statutory factors. See Section 211.071.6.

> *The first three factors* — [1] the seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction; [2] whether the offense alleged involved viciousness, force and violence; and [3] whether the offense alleged was against persons or property with greater weight

---

[1] All Section references are to RSMo (Cum. Supp. 2021), unless otherwise noted.

4

given to the offense against persons, especially if injury resulted—*are the most critical considerations in certification.*

Int. of D.D.B., 660 S.W.3d at 75–76 (quoting Int. of T.D.S., 642 S.W.3d at 527) (emphasis added).  The JO's petition alleged that D.J.S. committed what would be, were he an adult under the general laws, four acts of first-degree statutory sodomy.  First-degree statutory sodomy is a serious offense.  The first factor—the seriousness of the alleged offense — "is a 'dominant criterion among the ten factors.'"  Id. (quoting Int. of T.D.S., 642 S.W.3d at 537); see also Int. of E.T.S., 663 S.W.3d at 828 (finding a claim of improperly admitted testimony regarding the juvenile's maturity and likelihood of benefiting from treatment in the juvenile system was not prejudicial because dismissal of the juvenile petition was "easily" supported by the first three factors based on the allegations of second-degree murder and armed criminal action, which are serious, violent crimes against persons).

Although D.J.S. does not dispute the first three factors, he takes issue with other factors discussed by the circuit court.  In particular, D.J.S. disputes the circuit court's findings on the fourth factor, concerning "whether the offense alleged is part of a repetitive pattern of offenses[.]"  See Section 211.071.6(4).  D.J.S. suggests that the evidence did not show a "repetitive pattern of offenses" because D.J.S. had no prior record of delinquent conduct in the juvenile system through prior referrals or adjudications.  Although D.J.S. had no prior record in the juvenile system, the circuit court deemed the petition's multiple alleged counts of sodomy over several years to be "a repetitive pattern of alleged offenses" under Section 211.071.6(4).  The circuit court had "wide discretion" in considering this fourth factor, and we find no error with the circuit court's interpretation.  See A.R.K., 666 S.W.3d at 242 (finding that although the JO's report said the juvenile had no history with the JO involving weapons or violent offenses against persons, nor any known prior record in other courts or jurisdictions within Missouri apart

5

from one incident of stealing at age eleven and habitual absenteeism, the circuit court was free to find that the multiple incidents alleged in the petition established a repetitive pattern such that the circuit court did not abuse its discretion in weighing the fourth factor in favor of certification). Even had the circuit court erred in finding the fourth factor weighed in favor of certification, the "critical considerations" of the first three uncontested factors suggest a lack of prejudice. See Int. of E.T.S., 663 S.W.3d at 828.

D.J.S. further argues that the evidence indicated he was not sophisticated or mature, contrary to the circuit court's findings. The record indicates that D.J.S. knew to commit the alleged sexual acts in private and to use secretive spots, and knew to cover himself up when he was discovered. The JO observed that D.J.S. was "well developed and mature appearing" and "an individual of average intelligence." Although the JO did not specifically remember his conversation with D.J.S., he recalled having the impression that D.J.S. was a mature young man. The JO's comment that D.J.S. was "mature appearing" was within the context of the JO's observations about D.J.S.'s grades and school records and not only his physical appearance. Additionally, as the JO notes, learning disabilities and mental disorders are not necessarily determinative of maturity or lack thereof. The circuit court found D.J.S. to be an emotionally developed and physically mature sixteen-year-old. The circuit court noted that although D.J.S. may have struggled in school and had an IEP, he was meeting the requirements and expectations of the Juvenile Justice Center since his detention without the benefit of counseling or rehabilitative services. We find the record supports the circuit court's findings. See Int. of D.D.B., 660 S.W.3d at 74 (internal citation omitted).

D.J.S. maintains that he was capable of rehabilitation within the juvenile system. The statutory factors invite the circuit court to consider "[t]he program and facilities available to the

6

juvenile court in considering disposition" and "[w]hether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court[.]" Section 211.071.6(8)–(9). D.J.S. points to Dr. Lawrence's testimony that D.J.S.'s impulse control significantly improved once he moved out of his mother's unstable home and began living with Aunt, and that D.J.S. would likely continue to improve in the structured environment of the juvenile system. Undermining Dr. Lawrence's testimony was evidence that D.J.S moved in with Aunt in October 2020 yet alleged acts of statutory sodomy occurred in 2020 and 2021. See Int. of D.D.B., 660 S.W.3d at 74 (internal citation omitted) (noting we defer to the circuit court's determination as to the reliability and credibility of witness testimony). Thus, the evidence supported a finding that despite living in Aunt's more structured home environment, D.J.S. allegedly continued to reoffend.

The JO contends the evidence and alleged offenses indicate D.J.S. needs more than a structured environment to be rehabilitated—but needs treatment specifically geared towards sex offenders. D.J.S. relies on testimony in the record that while DYS offers no specific sex-offense treatment for juveniles, DYS develops individualized treatment plans based on the child's needs. We are not persuaded the circuit court abused its discretion in focusing on the lack of prospects for D.J.S. to be rehabilitated in the juvenile system, given the nature of the alleged offenses and the lack of a sexual offender program in the juvenile system. See Int. of T.D.S., 643 S.W.3d at 516 (internal quotation omitted) (noting a circuit court abuses its discretion in certifying a juvenile to be prosecuted as an adult when the decision is so unreasonable and arbitrary that it clearly defies the logic of the surrounding circumstances). Under our deferential standard of review, we acknowledge the evidence adduced in the record that D.J.S. would not be able to obtain adequate treatment in the juvenile system in part because the juvenile system, while not

7

turning away children who have committed sex crimes, lacks curriculum specific to sex offenses, whereas the Missouri Department of Correction ("DOC") is mandated to provide a program specifically designed to treat sex offenders.[2] See Section 589.040, RSMo (2016); Int. of D.D.B., 660 S.W.3d at 74 (internal citation omitted).

Considering the circuit court's findings on all the statutory factors, including the "most critical" factors that the alleged offenses were serious sexual offenses against a person involving force, as well as considering D.J.S.'s prospects for treatment in the juvenile system, the totality of the circumstances demonstrate that the circuit court did not abuse its discretion in dismissing the JO's petition and certifying D.J.S. See Int. of T.D.S., 643 S.W.3d at 527 (internal citation omitted). The point is denied.

Conclusion

The judgment of the circuit court is affirmed.

_Kurt S. Odenwald_
KURT S. ODENWALD, Judge

Michael E. Gardner, C.J., concurs.
Renée Hardin-Tammons, J., concurs.

---

[2] We recognize that the lack of prospects for D.J.S. to be rehabilitated in the juvenile system given the lack of a sexual offender program in the juvenile system was but one factor in the circuit court's consideration. But given the aggressive and dominant sexual content and themes that permeate society today, we are concerned by the lack of a sexual-offender program in the juvenile system that could offer juveniles a path toward rehabilitation outside of adult correctional institutions. At the same time, we cannot fault the circuit court for accepting the JO's testimony that D.J.S.'s rehabilitation is dependent upon treatment specifically geared towards sex offenders that does not exist with the juvenile system.